1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JEFFREY FRIEND,

        Plaintiff,

   v.

JOHN HEGARTY, et al.,

        Defendants.

Case No. 5:15-cv-04506-HRL

**ORDER GRANTING DEFENDANT BRENNAN'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND**

Re: Dkt. No. 32

     Pro se plaintiff Jeffrey Friend is a former employee of the U.S. Postal Service (USPS) who claims that USPS[1] discriminated against him based on a disability in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791, et seq. and because of his race (Caucasian) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.  He also sues the National Postal Mail Handlers Union (Union), and John Hegarty (the Union's former national president), for alleged breach of the duty of representation.  In sum, plaintiff claims that he was wrongfully disciplined and then terminated, and that the union defendants failed to give him the assistance he claims they were obliged to provide.

     All defendants have moved to dismiss the complaint.  In this order, the court addresses the

---

[1] The complaint named Megan Brennan in her capacity as Postmaster General.  The court will refer to her here as "USPS."

USPS's motion.[2]  Pursuant to Fed. R. Civ. P. 12(b)(1), USPS moves to dismiss the Rehabilitation

Act claim, arguing that plaintiff failed to exhaust his administrative remedies.  Pursuant to Fed. R.

Civ. P. 12(b)(6), USPS moves to dismiss the Title VII claim as untimely.  Plaintiff opposes the

motion.  Upon consideration of the moving and responding papers, as well as the oral arguments

presented, this court grants the USPS's motion without leave to amend.[3]

## BACKGROUND

The following background facts are drawn from Friend's First Amended Complaint

(FAC), the operative pleading:

Friend worked as a mail handler at the main post office facility in San Jose.  He says he

sustained a head injury in a 2008 bicycle accident that caused him to become easily startled.

Plaintiff alleges that while he sorted mail at a flat sorter machine, he was harassed by various co-

workers who would sneak up behind him and startle him, causing him to recoil or jump

backwards, sometimes nearly colliding with co-workers or parts of the sorting machine.

The FAC further alleges that, concerned for his safety, plaintiff filed a grievance with shop

steward Richard Mendoza in 2011, requesting that management prohibit managers other than

immediate supervisors from approaching employees on the work floor.  Mendoza reportedly told

plaintiff that management agreed to that request in writing.  Nevertheless, Friend alleges that

sometime later in 2011, a manager snuck up behind him while he was sorting mail at the flat sorter

machine.  To avoid being startled by co-workers, Friend says he then changed his body position

while sorting mail so that he more frequently faced the main thoroughfare on the work floor.

When questioned by Supervisor Rey Valdez about his changed body position, plaintiff

explained it was because his co-workers had not been adequately trained on workplace etiquette

and safety issues, including how to approach a machinist.  Plaintiff asked Valdez to rectify the

situation, but Valdez reportedly refused to provide such training because plaintiff was "the only

one complaining."  (FAC ¶ 30).  Valdez allegedly also forbade Friend from filling out a safety

---

[2] The Union defendants' motion will be addressed in a separate order.
[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

United States District Court
Northern District of California

form (used to report hazards) and from reporting to a shop steward that Valdez refused to permit plaintiff from filling out a safety form.

Friend says he continued to sort mail with modified body positioning.  And, it was around this time that Friend says that Valdez and Marita Mangahas (another supervisor) directed him to a back room at the post office for a meeting during which they criticized his work performance. Friend says that the supervisors denied his request to have a shop steward present at that meeting. Thereafter, Friend's supervisors allegedly persisted in trying to have Friend change his body positioning at the flat sorter machine; and, plaintiff says that he subsequently was ordered to leave the premises.  Friend reported the situation to a shop steward; and, three days later, he was reinstated to his position with back pay.

Upon his return to work, Friend says he met with shop steward Tom Anderson for the purpose of filing four grievances based on (1) management's refusal to let him fill out a safety form; (2) violation of the Zero Tolerance on Workplace Violence/Harassment policy; (3) his prior reported hazard of approaching machinists from behind remained unaddressed; and (4) management's alleged violation of a Union-Management agreement prohibiting non-immediate supervisors from initiating altercations on the work floor.  Friend further alleges that about a month later, he asked shop steward Mendoza about the status of his grievances and was told that none of them had been filed.

On January 8, 2012, Friend says that Donna Gabriel, a fellow mail handler, crept up behind him while he was facing the flat sorter machine, causing him to reflexively spin around and push Gabriel away.  Following a USPS investigation, Friend was fired on March 6, 2012.  USPS contends that plaintiff was fired for assaulting Gabriel.

Plaintiff filed a grievance to contest his termination.  In late 2012 or early 2013, the Union assigned one Reuben Martin to represent him.  An arbitration was held on June 7, 2013.  On July 29, 2013, the arbitrator affirmed USPS's decision to terminate plaintiff's employment.

The FAC alleges that following the July 29, 2013 arbitration decision, "Plaintiff diligently communicated with Union representatives Maria Cruz and Ernie Grijalva regarding the next steps in the appeal process."  (FAC ¶ 55).  On September 21, 2013, Grijalva allegedly "wrote to Mr.

1  Friend to explain that he had responded to EEO decision in a timely manner with the assistance of

2  an attorney retained by the Union." (Id. ¶ 57.1).

3        The FAC next alleges that on April 1, 2015, the U.S. Equal Employment Opportunity

4  Commission (EEOC) issued its decision adverse to Friend in his Appeal No. 0120133126.

5  Plaintiff says that at that time, he was homeless and was "suffering from a disabling medical

6  condition, exacerbated by his termination and resulting homelessness." (FAC ¶¶ 59-60).

7        Friend received a copy of the EEOC's decision on May 1, 2015. (FAC ¶ 61). Several

8  weeks later, on May 26, 2015, he says he "wrote to the EEOC to ask whether the Union filed a

9  timely request for reconsideration of the April 1, 2015 decision," claiming that the Union had

10  provided him no information about the case. (FAC ¶ 62). The following day, Friend says the

11  EEOC responded that no request for reconsideration had been filed. (Id. ¶ 63).

12        About a month later, on or around June 29, 2015, Friend allegedly "wrote to the EEOC by

13  certified mail, to request a civil court hearing for EEOC Appeal No. 0120133126." (FAC ¶ 64).

14  Friend alleges that he received no response to that letter and that on August 31, 2015 he again

15  wrote to the EEOC, stating:

16        I have received no response from EEOC for months after I responded to
        their decision on Appeal No. 0120133126 via certified mail.  I was
17        informed that I was entitled to a civil court hearing, and may receive a
        court-appointed attorney for said matter at no cost.  Will you give me any
18        updated information on whether said request has been granted, and when it
        will occur?
19
20  (Id. ¶ 65). On September 1, 2015, the EEOC allegedly responded:

21        To file a civil action, you need to go to the appropriate federal district court.
        To search for the appropriate federal district court where you can file a civil
22        action, you should check the US Court's homepage, www.uscourts.gov.  To
        request appointment of an attorney, you need to direct your request to the
23        court, not the Commission.

24  (FAC ¶ 66).

25        This lawsuit followed.

26        Friend's original complaint was filed on September 30, 2015.  Defendants moved to

27  dismiss, arguing that plaintiff's claims were untimely and that the complaint failed to state a claim

28  for relief.  Those motions were deemed moot when Friend timely amended his complaint once as

United States District Court
Northern District of California

4

1    of right by filing the FAC.  Fed. R. Civ. P. 15.

2        As discussed above, the FAC alleges that USPS violated the Rehabilitation Act (disability

3    discrimination) and Title VII (race discrimination).  Pursuant to Fed. R. Civ. P. 12(b)(1), USPS

4    moves to dismiss the Rehabilitation Act claim, arguing that plaintiff failed to exhaust his

5    administrative remedies.  Pursuant to Fed. R. Civ. P. 12(b)(6), USPS moves to dismiss the Title

6    VII claim as untimely.  For the reasons to be discussed, the court grants the motion without leave

7    to amend.

8                                        **LEGAL STANDARD**

9    **A.      Federal Rule of Civil Procedure 12(b)(1)**

10       "If the court determines at any time that it lacks subject-matter jurisdiction, the court must

11   dismiss the action."  Fed. R. Civ. P. 12(h)(3).  A lack of jurisdiction is presumed unless the party

12   asserting jurisdiction establishes that it exists.  See Kokkonen v. Guardian Life Ins. Co. of

13   America, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [a federal

14   court's] limited jurisdiction and the burden of establishing the contrary rests upon the party

15   asserting jurisdiction") (citations omitted); see also Stock West, Inc. v. Confederated Tribes, 873

16   F.2d 1221, 1225 (9th Cir. 1989) ("A federal court is presumed to lack jurisdiction in a particular

17   case unless the contrary affirmatively appears").

18       "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the

19   pleadings or by presenting extrinsic evidence."  Warren v. Fox Family Worldwide, Inc., 328 F.3d

20   1136, 1139 (9th Cir. 2003) (citing White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000)).  Where, as

21   here, the challenger raises a factual attack on jurisdiction, "the district court may review evidence

22   beyond the complaint without converting the motion to dismiss into a motion for summary

23   judgment."  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  "Once the

24   moving party has converted the motion to dismiss into a factual motion by presenting affidavits or

25   other evidence properly brought before the court, the party opposing the motion must furnish

26   affidavits or other evidence necessary to satisfy its burden of establishing subject matter

27   jurisdiction."  Id. (citation omitted).

28

United States District Court
Northern District of California

5

**B.     Federal Rule of Civil Procedure 12(b)(6)**

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims in the complaint.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.  Id. (citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990)).  In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant.  Id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Moreover, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."  Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  This means that the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted) However, only plausible claims for relief will survive a motion to dismiss.  Iqbal, 129 S.Ct. at 1950.  A claim is plausible if its factual content permits the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.  Id.  A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Id. at 1949.

Documents appended to the complaint or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Fed. R. Civ. P. 12(b)(6) motion.  See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

While leave to amend generally is granted liberally, the court has discretion to dismiss a claim without leave to amend if amendment would be futile.  Rivera v. BAC Home Loans Servicing, L.P., 756 F. Supp.2d 1193, 1997 (N.D. Cal. 2010) (citing Dumas v. Kipp, 90 F.3d 386,

393 (9th Cir. 1996)).

# DISCUSSION

### A.      Rehabilitation Act Claim

Friend alleges that he is disabled "due to his physical, mental and emotional disabilities," and that defendant violated the Rehabilitation Act by failing to accommodate his disability; "when it refused to address the safety hazard of approaching from behind that Plaintiff brought to USPS's attention"; and "when it condoned and sanctioned the harassment of Plaintiff by his managers and supervisors because of his disability." (FAC ¶¶ 70-73).

Plaintiff is required to exhaust his administrative remedies with the EEOC before pursuing Rehabilitation Act claims in district court. Leong v. Potter, 347 F.3d 1117, 1121 (9th Cir. 2003); see also Vinieratos v. United States Dep't of Air Force, 939 F.2d 762, 773 (9th Cir. 1991) ("Our holding that appellant failed to exhaust those remedies forecloses any claim to jurisdiction under the Rehabilitation Act."). "Although failure to file an EEOC complaint is not a complete bar to district court jurisdiction, substantial compliance with the exhaustion requirement is a jurisdictional pre-requisite." Leong, 347 F.3d at 1122 (citing Sommatino v. United States, 255 F.3d 704, 708 (9th Cir.2001)). "The jurisdictional scope of the plaintiff's court action depends on the scope of the EEOC charge and investigation." Id. "The specific claims made in district court ordinarily must be presented to the EEOC." Id. "However, the district court has jurisdiction over any charges of discrimination that are 'like or reasonably related to' the allegations made before the EEOC, as well as charges that are within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations." Id. (quoting Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990)).

Here, defendant submits a copy of the EEOC's decision affirming USPS's decision to terminate Friend. (Dkt. 33, Scharf Decl., Ex. A). According to that document, plaintiff's EEO complaint alleged that USPS "discriminated against him on the bases of race (Caucasian), national origin (American), sex (male), religion (Agnostic), color (White), age (43), and in reprisal for prior protected EEO activity when, on February 9, 2012, he was issued a Notice of Removal." (Id. at ECF p. 5). Plaintiff does not dispute that he did not present a disability discrimination claim to

7

1    the EEOC.  Indeed, he has submitted a declaration stating, "I was not aware of my disability at the

2    time of my EEO filing."  (Dkt. 37, Friend Decl. at ECF p. 3).

3          Friend's disability claim is not like or reasonably related to the allegations of

4    discrimination based on race, national origin, sex, religion, color, and age that were presented to

5    the EEOC.  Courts have concluded that claims are not similar or related where, as here, the claims

6    rely on different theories of discrimination or on different statutes.  See, e.g., Leong, 347 F.3d at

7    1122 (concluding that plaintiff's claims of discrimination based on race, color, religion, sex, and

8    national origin were not like or reasonably related to his disability discrimination claim, which

9    relied on a different theory and a different statute); Rodriguez v. Airborne Express, 265 F.3d 890,

10   897 (9th Cir. 2001) (concluding that the plaintiff's race-based discrimination claim would not

11   reasonably trigger an investigation of disability discrimination because the "two claims involve[d]

12   totally different kinds of allegedly improper conduct, and investigation into one claim would not

13   likely lead to investigation of the other").  The EEOC's decision makes no mention of disability.

14   (Scharf Decl., Ex. A).  Nor could the EEOC reasonably have been expected to investigate a

15   disability discrimination claim when Friend himself was unaware of a disability at that time.

16         Accordingly, Friend did not substantially comply with the statutory presentment

17   requirement with respect to a disability discrimination claim and therefore failed to exhaust his

18   administrative remedies under the Rehabilitation Act.  The USPS's motion to dismiss this claim is

19   granted.

20         **B.      Title VII Claim**

21         Friend alleges that the majority of his supervisors were of Filipino descent and claims that

22   USPS discriminated against him "because of his race when it condoned and sanctioned the

23   harassment of Plaintiff by his managers and supervisors."  (FAC ¶¶ 77-78).  USPS moves to

24   dismiss this claim as untimely, arguing that Friend has not and cannot allege sufficient facts to toll

25   the filing deadline.

26         Federal employees who wish to pursue discrimination claims in district court must file a

27   civil action "[w]ithin 90 days of receipt of notice of final action taken" by the agency or by the

28   EEOC.  42 U.S.C. § 2000e-16(c).  "This ninety-day period is a statute of limitations."  Nelmida v.

*Shelly Eurocars, Inc.*, 112 F.3d 380, 383 (9th Cir. 1997).  The ninety-day filing requirement is not a jurisdictional prerequisite.  Nevertheless, "if a claimant fails to file the civil action within the ninety-day period, the action is barred."  Id.

The Title VII claim unquestionably was filed too late.  Plaintiff admits that he received a copy of the EEOC's decision on May 1, 2015.  (FAC ¶ 61).  There is no dispute that, in a section of the EEOC's decision titled "COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION," the EEOC advised plaintiff:

> ***You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision.***  If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title.  Failure to do so may result in the dismissal of your case in court.  "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.  If you file a request to reconsider and also file a civil action, filing a civil action will terminate the administrative processing of your complaint.

(Dkt. 33, Scharf Decl., Ex. A at ECF p. 8) (emphasis added).[4]  Friend's federal court complaint, which should have been filed by July 30, 2015, was not filed until September 30, 2015.

The primary point of contention is whether Friend has alleged or could allege sufficient facts to justify application of equitable tolling or equitable estoppel to toll the ninety-day filing period.  In a declaration submitted in opposition to defendants' motions to dismiss, Friend asserts a number of reasons why the filing period should be tolled----none of which are alleged in the complaint.  Although the court cannot consider his declaration on a Rule 12(b)(6) motion, defendant agrees that the court may consider the assertions in Friend's declaration to determine whether leave to amend would be futile.

### 1.    Equitable Tolling

The doctrine of equitable tolling focuses on whether there was excusable delay by the plaintiff.  *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002); *Santa Maria v. Pacific Bell*,

---

[4] The authenticity of the EEOC decision submitted by USPS is not disputed, and the court takes judicial notice of it.  Fed. R. Evid. 201; *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994) (holding that a district court may take judicial notice of facts contained in records and reports of administrative bodies without converting a Fed. R. Civ. P. 12(b)(6) motion to dismiss into one for summary judgment).

202 F.3d 1170, 1178 (9th Cir. 2000), overruled on other grounds by <u>Socop-Gonzalez v. INS</u>, 272 F.3d 1176, 1194-96 (9th Cir. 2001) (en banc).  The principles of equitable tolling, however, do not extend to garden variety claims of excusable neglect, and courts generally have applied equitable relief only sparingly.  <u>Irwin v. Dep't of Veterans Affairs</u>, 498 U.S. 89, 96 (1990).  "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim."  <u>Santa Maria</u>, 202 F.3d at 1178.  The doctrine "has been consistently applied to excuse a claimant's failure to comply with the time limitations where she had neither actual nor constructive notice of the filing period."  <u>Johnson</u>, 314 F.3d at 414 (citation omitted).  However, courts "have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."  <u>Irwin</u>, 498 U.S. at 96.

Essentially, Friend argues that the ninety-day filing period should be tolled due to (1) mental incompetence; (2) homelessness; and (3) good faith error.

### a.      Mental Incompetence and Homelessness

"Mental incompetence may equitably toll administrative deadlines if a plaintiff meets a two-part test."  <u>Johnson v. Lucent Technologies, Inc.</u>, 653 F.3d 1000, 1010 (9th Cir. 2011).  "First, a plaintiff must show his mental impairment was an extraordinary circumstance beyond his control by demonstrating the impairment was so severe that either (a) plaintiff was unable rationally or factually to personally understand the need to timely file, or (b) plaintiff's mental state rendered him unable personally to prepare [a complaint] and effectuate its filing."  <u>Id.</u> (citation omitted).  "Second, the plaintiff must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances."  <u>Id.</u> (citation omitted).  So, for example, mental incompetence has been used to toll deadlines where a plaintiff, who was repeatedly sexually abused and raped at work, was diagnosed "completely psychiatrically disabled," leaving her unable to read or open mail or to function in society.  <u>Stoll v. Runyon</u>, 165 F.3d 1238 (9th Cir. 1999).  Equitable tolling was also applied where a habeas petitioner's mental illness was so severe (he suffered from delusions that he worked undercover for the FBI and that the FBI had staged his

United States District Court
Northern District of California

1    conviction to lure his ex-wife out of hiding so she could be arrested on drug charges) that he was

2    incapable of understanding the need to timely file his petition.  Forbess v. Franks, 749 F.3d 837

3    (9th Cir. 2014).

4             As for homelessness, courts do not consider that to be an extraordinary circumstance

5    warranting tolling where it appears that the plaintiff is still able to pursue claims, despite being

6    homeless.  See, e.g., Holland v. Western Development Corp., 799 F. Supp. 181, 183 (D.D.C.

7    1992) ("Even while [plaintiff] was homeless, she managed to pursue her claim for unemployment

8    benefits.  She was clearly able to maintain contact with a government agency where necessary

9    despite her homelessness."); Howard v. Fort Wayne Community Schools, No. 1:13 CV 253, 2015

10   WL 4393993 at *1 (N.D. Ind., July 16, 2015) (declining to toll limitations period due to

11   homelessness where the plaintiff was able to file a pro se EEOC charge and a pro se federal

12   lawsuit, "demonstrat[ing] a basic understanding of the legal issues involved and the ability to

13   follow simple instructions"); Johnson v. Airway Cleaning Co. at JFK Airport, No. 12 Civ.

14   4306(BMC), 2012 WL 5346983 at *3 (E.D.N.Y., Oct. 29, 2012) (stating that while "it is

15   conceivable that relocation to a homeless shelter might warrant some period of equitable tolling,"

16   no tolling was warranted under the circumstances where plaintiff did not tie her inability to file on

17   time to her residence in a homeless shelter and managed to file her lawsuit despite her residence in

18   that shelter).

19            The facts of the case before this court are not nearly as compelling as those in which

20   tolling has been applied.  Nothing about Friend's assertions re homelessness, post-traumatic stress

21   disorder, and medication side effects suggests that he is so compromised that he cannot understand

22   the meaning of a deadline.  In fact, the FAC alleges that after the arbitrator's July 29, 2013

23   decision, he "diligently communicated with Union representatives . . . regarding the next steps in

24   the appeal process," and also communicated with the EEOC about the status of his case.  (See,

25   e.g., FAC ¶¶ 55, 62-66).  Indeed, despite his homelessness and claimed mental issues, plaintiff

26   managed to file this lawsuit, to timely file his FAC, and to timely file his opposition to the instant

27   motions to dismiss.

28

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### b.     Good Faith Error

So, that leaves Friend's assertion that he mistakenly believed that the EEOC was the place to start a civil action.  "Generally, equitable tolling is reserved for situations in which a claimant has made a good faith error, and is not applied where a claimant is aware of the filing requirements yet fails to file a timely complaint due entirely to a lack of diligence."  Radford v. St. Regis Hotel, No. C10-02338 EDL, 2010 WL 3749304 at *2 (N.D. Cal., Sept. 22, 2010).  Generally, equitable tolling has been applied where the error in question was not the fault of the plaintiff.  So, for example, in Radford, the plaintiff wished to sue his employer and his union, but did so via two separate complaints.  He timely brought both complaints to the Clerk's Office, but only one was filed (apparently because the filing clerk believed that plaintiff was presenting two copies of the same complaint).  Although the court noted that plaintiff could have been more diligent in examining the papers he received from the Clerk's Office, it denied defendants' motion to dismiss because the failure to timely file the second complaint did not appear to have been based on an error on plaintiff's part.  2010 WL 3749304 at *2.

Equitable tolling has also been applied where the untimely filing *is* due to the plaintiff's error, but the mistake was reasonable under the circumstances.  So, for example, the Ninth Circuit has applied tolling where the plaintiff filed a timely Title VII complaint, but filed it in state court, rather than federal court---and then later filed a complaint in federal court, but only after the 90-day deadline passed.  Valenzuela v. Kraft, Inc., 801 F.2d 1170 (9th Cir. 1986).  In concluding that the filing of the first suit tolled the filing deadline, the Ninth Circuit emphasized that the plaintiff had expeditiously pursued her claims and noted that at the time she filed in state court, "it was unclear whether federal courts had exclusive jurisdiction over Title VII claims . . . . [Plaintiff] should not be denied a chance to present her case because she chose the wrong line of precedent."  Id. at 1175.

By contrast, courts have declined to apply tolling where the plaintiff had clear notice of the filing deadline, but failed to exercise due diligence.  In Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147 (1984), the plaintiff filed her right to sue letter (as opposed to an actual complaint) with the district court and requested the appointment of counsel.  A magistrate judge warned her

that she had to file an action within the ninety-day filing period and that her request for counsel needed to be submitted on the appropriate court form.  When she failed to file a complaint or an appropriate request for counsel, the court dismissed her case after the ninety-day period passed. The Eleventh Circuit reversed, but the U.S. Supreme Court held that the filing of the right to sue letter did not commence an action under Title VII.  In so holding, the Court reasoned:

> This is not a case in which a claimant has received inadequate notice; or where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon; or where the court has led the plaintiff to believe that she had done everything required of her.  Nor is this a case where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction.  The simple fact is that Brown was told three times what she must do to preserve her claim, and she did not do it.  One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.

466 U.S. at 1725-26 (citations omitted).

Similarly, a plaintiff's suit was dismissed as untimely where the plaintiff claimed he timely filed his complaint by leaving it in the court's after-hours drop box, but found out that the complaint had not been filed when he inquired at the Clerk's Office about six months later. Beutler v. Potter, No. C06-1833 CW, 2007 WL 2990360 (N.D. Cal., Oct. 11, 2007).  The court found no excuse for the delay because plaintiff failed to exercise diligence in confirming whether the Clerk's Office received his complaint.  Id. at *4.

Here, the FAC's allegations suggest that Friend mistakenly believed that a request to file a civil suit had to be made with the EEOC; he made such a request within the filing period, but the EEOC did not respond; and it wasn't until he followed up with the EEOC---after the filing period had already passed---that he realized that he had to file a suit in district court.

The EEOC decision, however, clearly said that a civil action was to be filed in "an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision." (Scharf Decl., Ex. A at ECF p. 8).  Plaintiff complains that the EEOC never responded and did not direct him to district court until after he followed up in August 2015. The EEOC's alleged September 1, 2015 response (1) provided Friend with a link to the U.S. Court's webpage and (2) expressly said that a request for counsel must be filed with "the court, not the Commission." (FAC ¶ 66).  But, in substance, that response does not say anything

United States District Court
Northern District of California

different than the April 1, 2015 decision.  And, there is nothing to suggest that the notice given to Friend in the April 1, 2015 decision was confusing or ambiguous.  Tolling on this basis is not warranted.

### 2.      Equitable Estoppel

Equitable estoppel focuses on a defendant's actions in preventing a plaintiff from filing suit.  Johnson, 314 F.3d at 414.  The doctrine may apply against the employer where the employer takes active steps, such as misrepresenting or concealing necessary facts, to prevent the plaintiff from suing in time.  Id.; Santa Maria, 202 F.3d at 1176-77.

There is no suggestion in the original complaint, the FAC, or in Friend's declaration that USPS did anything to prevent him from timely filing suit.  And, when probed by the court at the motion hearing, plaintiff was unable to identify anything that USPS did that might have prevented him, dissuaded him, or otherwise made him think that he did not have to file a civil suit within 90 days from his receipt of the EEOC's decision.  The lack of sufficient factual allegation (or even a suggestion that he could plead such facts) leads the court to conclude that amendment would be futile.  In his declaration submitted in opposition to defendants' motion, plaintiff suggests that at the time he received the EEOC's September 1, 2015 letter, the Union defendants attempted to delay his efforts to file suit (e.g., by allegedly promising to find him an attorney).  By then, however, the 90-day period had long since passed, and the record before the court shows that plaintiff was aware that a civil action had to be filed within 90 days after his May 1, 2015 receipt of the EEOC's decision.

Accordingly, this court concludes that Friend's Title VII claim is untimely; no tolling applies; and that amendment would be futile.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER**

     Based on the foregoing, the USPS's motion to dismiss plaintiff's complaint is granted without leave to amend.

     SO ORDERED.

Dated:   March 29, 2017

HOWARD R. LLOYD
United States Magistrate Judge

15

5:15-cv-04506-HRL Notice has been electronically mailed to:

Bruce Lerner     blerner@bredhoff.com

Christopher Eugene Platten     cplatten@wmprlaw.com, bsafadi@wmprlaw.com,
ltodd@wmprlaw.com

James A. Scharf     james.scharf@usdoj.gov, elizabeth.inocencio@usdoj.gov

Joshua Aaron Segal     jsegal@bredhoff.com, sziaii@bredhoff.com


5:15-cv-04506-HRL Notice sent by U.S. Mail to:

Jeffrey Friend
80 S. Market Street
San Jose, CA 95113