UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JEFFREY FRIEND,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN HEGARTY, et al.,<br><br>    Defendants. | Case No. 5:15-cv-04506-HRL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART UNION DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 35 |

    Pro se plaintiff Jeffrey Friend is a former employee of the U.S. Postal Service (USPS) who claims that USPS discriminated against him based on a disability in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791, et seq. and because of his race (Caucasian) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. He also sues the National Postal Mail Handlers Union (Union) and John Hegarty (the Union's former national president), collectively referred to here as the "union defendants," for alleged breach of the duty of fair representation. In sum, plaintiff claims that he was wrongfully disciplined and then terminated, and that the union defendants failed to give him the assistance he claims they were obliged to provide.

    All defendants have moved to dismiss the complaint. In this order, the court addresses the union defendants' motion.[1] Pursuant to Fed. R. Civ. P. 12(b)(6), these defendants move to dismiss

---

[1] The USPS's motion is addressed in a separate order.

on the grounds that Hegarty is not a proper defendant and that plaintiff's duty of fair representation claim is untimely or based on an alleged duty that the Union says it did not owe. Plaintiff opposes the motion. Upon consideration of the moving and responding papers, as well as the oral arguments presented, this court grants the motion in part and denies it in part.[2]

## BACKGROUND

The following background facts are drawn from Friend's First Amended Complaint (FAC), the operative pleading:

Friend worked as a mail handler at the main post office facility in San Jose. He says he sustained a head injury in a 2008 bicycle accident that caused him to become easily startled. Plaintiff alleges that while he sorted mail at a flat sorter machine, he was harassed by various co-workers who would sneak up behind him and startle him, causing him to recoil or jump backwards, sometimes nearly colliding with co-workers or parts of the sorting machine.

The FAC further alleges that, concerned for his safety, plaintiff filed a grievance with shop steward Richard Mendoza in 2011, requesting that management prohibit managers other than immediate supervisors from approaching employees on the work floor. Mendoza reportedly told plaintiff that management agreed to that request in writing. Nevertheless, Friend alleges that sometime later in 2011, a manager snuck up behind him while he was sorting mail at the flat sorter machine. To avoid being startled by co-workers, Friend says he then changed his body position while sorting mail so that he more frequently faced the main thoroughfare on the work floor.

When questioned by Supervisor Rey Valdez about his changed body position, plaintiff explained it was because his co-workers had not been adequately trained on workplace etiquette and safety issues, including how to approach a machinist. Plaintiff asked Valdez to rectify the situation, but Valdez reportedly refused to provide such training because plaintiff was "the only one complaining." (FAC ¶ 30). Valdez allegedly also forbade Friend from filling out a safety form (used to report hazards) and from reporting to a shop steward that Valdez refused to permit plaintiff from filling out a safety form.

---

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

Friend says he continued to sort mail with modified body positioning. And, it was around this time that Friend says that Valdez and Marita Mangahas (another supervisor) directed him to a back room at the post office for a meeting during which they criticized his work performance. Friend says that the supervisors denied his request to have a shop steward present at that meeting. Thereafter, Friend's supervisors allegedly persisted in trying to have Friend change his body positioning at the flat sorter machine; and, plaintiff says that he subsequently was ordered to leave the premises. Friend reported the situation to a shop steward; and, three days later, he was reinstated to his position with back pay.

Upon his return to work, Friend says he met with shop steward Tom Anderson for the purpose of filing four grievances based on (1) management's refusal to let him fill out a safety form; (2) violation of the Zero Tolerance on Workplace Violence/Harassment policy; (3) his prior reported hazard of approaching machinists from behind remained unaddressed; and (4) management's alleged violation of a Union-Management agreement prohibiting non-immediate supervisors from initiating altercations on the work floor. Friend further alleges that about a month later, he asked shop steward Mendoza about the status of his grievances and was told that none of them had been filed.

On January 8, 2012, Friend says that Donna Gabriel, a fellow mail handler, crept up behind him while he was facing the flat sorter machine, causing him to reflexively spin around and push Gabriel away. Following a USPS investigation, Friend was fired on March 6, 2012. USPS contends that plaintiff was fired for assaulting Gabriel.

Plaintiff filed a grievance to contest his termination. In late 2012 or early 2013, the Union assigned one Reuben Martin to represent him. An arbitration was held on June 7, 2013. On July 29, 2013, the arbitrator affirmed USPS's decision to terminate plaintiff's employment.

The FAC alleges that following the July 29, 2013 arbitration decision, "Plaintiff diligently communicated with Union representatives Maria Cruz and Ernie Grijalva regarding the next steps in the appeal process." (FAC ¶ 55). Plaintiff says he "expressed his disappointment that the Union had failed to adequately represent him" and also explained that his medical situation had worsened and that he was likely to be evicted from his home. (Id.).

3

Additionally, Friend says that on August 5, 2013, he wrote to the Union to request that they contact him by email since his phone service might be cutoff for non-payment. That same day, according to the FAC, plaintiff also wrote to Reuben Martin, asserting that Martin "obstruct[ed] . . . both my arbitration and EEO cases" and requesting that Martin "turn[] over the EEO case files concerning myself to the NPMHU attorney TODAY to avert further liability for exacerbating damages affecting me." (FAC ¶ 57).

On September 21, 2013, Grijalva allegedly "wrote to Mr. Friend to explain that he had responded to EEO decision in a timely manner with the assistance of an attorney retained by the Union." (Id. ¶ 57.1).

The FAC next alleges that on April 1, 2015, the U.S. Equal Employment Opportunity Commission (EEOC) issued its decision adverse to Friend in his Appeal No. 0120133126. Plaintiff says that at that time, he was homeless and was "suffering from a disabling medical condition, exacerbated by his termination and resulting homelessness." (FAC ¶¶ 59-60).

Friend received a copy of the EEOC's decision on May 1, 2015. (FAC ¶ 61). Several weeks later, on May 26, 2015, he says he "wrote to the EEOC to ask whether the Union filed a timely request for reconsideration of the April 1, 2015 decision," claiming that the Union had provided him no information about the case. (FAC ¶ 62). The following day, Friend says the EEOC responded that no request for reconsideration had been filed.

About a month later, on or around June 29, 2015, Friend allegedly "wrote to the EEOC by certified mail, to request a civil court hearing for EEOC Appeal No. 0120133126." (FAC ¶ 64). Friend alleges that he received no response to that letter and that on August 31, 2015 he again wrote to the EEOC, stating:

> I have received no response from EEOC for months after I responded to their decision on Appeal No. 0120133126 via certified mail. I was informed that I was entitled to a civil court hearing, and may receive a court-appointed attorney for said matter at no cost. Will you give me any updated information on whether said request has been granted, and when it will occur?

(Id. ¶ 65). On September 1, 2015, the EEOC allegedly responded:

> To file a civil action, you need to go to the appropriate federal district court. To search for the appropriate federal district court where you can file a civil

4

>action, you should check the US Court's homepage, www.uscourts.gov. To request appointment of an attorney, you need to direct your request to the court, not the Commission.

(FAC ¶ 66).

Meanwhile, Friend also challenged the adequacy of the Union's representation through administrative channels. And, on September 1, 2015, the National Labor Relations Board affirmed the Acting Regional Director's decision not to issue a complaint. (FAC ¶ 67).

Plaintiff filed the instant lawsuit on September 30, 2015. He alleges that the Union failed to adequately represent him in multiple ways, including the failure to file the grievances he discussed with shop steward Anderson; by failing to submit important evidence at the arbitration; and in the EEO and EEOC proceedings.

Defendants moved to dismiss the complaint, arguing that plaintiff's claims were untimely and that the complaint failed to state a claim for relief. Those motions were deemed moot when Friend timely amended his complaint once as of right by filing the FAC. Fed. R. Civ. P. 15.

In the FAC, Friend sues the union defendants under 39 U.S.C. § 1208 of the Postal Reorganization Act (PRA), claiming that they breached the duty of fair representation in three main ways:

(1) by "fail[ing] to file any of the grievances Plaintiff lodged with the Union after returning from his 3-day suspension with pay" (FAC ¶ 81);

(2) by failing to adequately represent him during the grievance and arbitration proceedings challenging his termination (e.g., by "fail[ing] to submit critical evidence regarding Plaintiff's history of communications regarding safety issues with management during Plaintiff's grievance challenging his termination" and "fail[ing] to adequately communicate the outcome of the Arbitration hearing to Plaintiff and inform Plaintiff of his right to appeal and the timeframe for doing so" (FAC ¶¶ 82-84); and

(3) by "fail[ing] to communicate the outcome of the EEO and EEOC proceedings to Plaintiff and inform Plaintiff of his right to appeal and the timeframe for doing so" (FAC ¶ 85).

Pursuant to Fed. R. Civ. P. 12(b)(6), the union defendants move to dismiss, arguing that plaintiff's

5

claim is untimely or fails to state a claim for breach of the duty of fair representation. For the reasons to be discussed, the court grants the motion in part and denies it in part.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims in the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. Id. (citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. Id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Moreover, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." This means that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted) However, only plausible claims for relief will survive a motion to dismiss. Iqbal, 129 S.Ct. at 1950. A claim is plausible if its factual content permits the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Id. A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 1949.

Documents appended to the complaint or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Fed. R. Civ. P. 12(b)(6) motion. See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

While leave to amend generally is granted liberally, the court has discretion to dismiss a

1  claim without leave to amend if amendment would be futile. Rivera v. BAC Home Loans
2  Servicing, L.P., 756 F. Supp.2d 1193, 1997 (N.D. Cal. 2010) (citing Dumas v. Kipp, 90 F.3d 386,
3  393 (9th Cir. 1996)).

**DISCUSSION**

### A. Defendant Hegarty

Pointing out that his name appears nowhere in the body of the FAC and that there are no allegations that he is responsible for any of the conduct of which plaintiff complains, Hegarty argues that he is not a proper defendant. Indeed, plaintiff's claim for breach of the duty of fair representation lies "only against a union as an entity, and not against individuals who happen to hold positions in that union." Carter v. Smith Food King, 765 F.2d 916, 921 (9th Cir. 1985).[3] Defendants' motion to dismiss Hegarty is granted without leave to amend.

### B. Statute of Limitations—Grievance and Arbitration Proceedings

The Union argues that plaintiff's claim for breach of the duty of representation is untimely to the extent the claim is based on allegations that defendants (1) "failed to file any of the grievances Plaintiff lodged with the Union after returning from his 3-day suspension with pay" (FAC ¶ 81); and (2) failed to adequately represent him during the grievance and arbitration proceedings challenging his termination (e.g., by "fail[ing] to submit critical evidence regarding Plaintiff's history of communications regarding safety issues with management during Plaintiff's grievance challenging his termination" and "fail[ing] to adequately communicate the outcome of the Arbitration hearing to Plaintiff and inform Plaintiff of his right to appeal and the timeframe for doing so" (FAC ¶¶ 82-84).

Plaintiff's claim for breach of the duty of fair representation is governed by a 6-month limitations period that "begins to run when a plaintiff knew, or should have known, of the

---

[3] Although Carter concerned suits under the Labor Management Relations Act (LMRA) Section 301, 29 U.S.C. § 185, cases interpreting LMRA Section 301 have been applied to those brought under the PRA, 39 U.S.C. § 1208. See generally U.S. Postal Service v. American Postal Workers Union, AFL-CIO, 893 F.2d 1117, 1120 (9th Cir. 1990); see also Podobnik v. U.S. Postal Service, 409 F.3d 584, 586 n.1 (3d Cir. 2005) ("The language of section 1208(b) is nearly identical to that of Labor Management Relations Act section 301; hence, other circuits have used cases interpreting section 301 to interpret section 1208(b).").

7

defendant's wrongdoing." Stone v. Writer's Guild of America West, Inc., 101 F.3d 1312, 1314 (9th Cir. 1996) (citations omitted); see also Trent v. Bolger, 837 F.2d 657, 659 (4th Cir. 1988) (applying 6-month statute of limitations period to a claim under the PRA § 1208).

As to the allegations in question, there is no dispute that this lawsuit was filed years after Friend knew or should have known about the claimed violations:

With respect to the grievances Friend says he lodged upon his return to work after a 3-day suspension, he learned that those grievances had not been filed a month after he requested that the shop steward submit them. (FAC ¶ 37). The FAC is a bit vague on exactly when that happened, but the allegations suggest that it was sometime in 2011—and, in any event, plaintiff knew the grievances had not been filed before his termination in March 2012.

As for allegations that the Union failed to submit "critical evidence" and to "vigorously represent" him during the grievance and arbitration proceedings, the FAC indicates that Friend was present at the arbitration hearing, which was held on June 7, 2013. (FAC ¶¶ 49, 53-54). The FAC alleges that "[a]t the arbitration hearing, the Union failed to submit crucial pieces of evidence" and "Plaintiff also discovered that the Union had withheld information regarding Plaintiff's safety training grievance . . . ." (Id. ¶¶ 53-54). The FAC further alleges that, following the arbitrator's July 29, 2013 decision, he "diligently communicated with Union representatives . . . regarding the next steps in the appeal process," "expressed his disappointment that the Union had failed to adequately represent him," and advised that "he was likely to be evicted." (Id. ¶ 55). The FAC does not say exactly when these communications took place, but the allegations suggest that they occurred on or before August 5, 2013---the date when plaintiff attended an eviction meeting. (Id. ¶ 57).

In a declaration submitted in opposition to defendants' motions to dismiss, Friend asserts a number of reasons why the filing period should be tolled----none of which are alleged in the complaint. Although the court cannot consider his declaration on a Rule 12(b)(6) motion, the court will consider the assertions in Friend's declaration to determine whether leave to amend would be futile.

### 1. Equitable Tolling

The doctrine of equitable tolling focuses on whether there was excusable delay by the plaintiff. Johnson v. Henderson, 314 F.3d 409, 414 (9th Cir. 2002); Santa Maria v. Pacific Bell, 202 F.3d 1170, 1178 (9th Cir. 2000), overruled on other grounds by Socop-Gonzalez v. INS, 272 F.3d 1176, 1194-96 (9th Cir. 2001) (en banc). The principles of equitable tolling, however, do not extend to garden variety claims of excusable neglect, and courts generally have applied equitable relief only sparingly. Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990). "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." Santa Maria, 202 F.3d at 1178. The doctrine "has been consistently applied to excuse a claimant's failure to comply with the time limitations where she had neither actual nor constructive notice of the filing period." Johnson, 314 F.3d at 414 (citation omitted). However, courts "have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." Irwin, 498 U.S. at 96.

Friend argues that the limitations period should be tolled due to (1) mental incompetence; (2) homelessness; and (3) good faith error. Based on the FAC's allegations, it appears that not all of these conditions were present during the relevant time period and only arose well after the limitations periods lapsed. Nevertheless, for the reasons to be discussed, the court does not find that equitable tolling is warranted in any event.[4]

#### a. Mental Incompetence and Homelessness

"Mental incompetence may equitably toll administrative deadlines if a plaintiff meets a two-part test." Johnson v. Lucent Technologies, Inc., 653 F.3d 1000, 1010 (9th Cir. 2011). "First, a plaintiff must show his mental impairment was an extraordinary circumstance beyond his control by demonstrating the impairment was so severe that either (a) plaintiff was unable rationally or factually to personally understand the need to timely file, or (b) plaintiff's mental state rendered

---

[4] Plaintiff does not argue that the filing of a matter with the NLRB tolled the limitations period. In any event, there is no indication that the filing of that matter was a required precondition of filing suit. See Conley v. Int'l Bhd. of Elec. Workers, Local 639, 810 F.2d 913, 916 (9th Cir. 1987) (concluding that a "merely optional" filing of an NLRB action did not toll the limitations period.).

9

him unable personally to prepare [a complaint] and effectuate its filing." Id. (citation omitted). "Second, the plaintiff must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances." Id. (citation omitted). So, for example, mental incompetence has been used to toll deadlines where a plaintiff, who was repeatedly sexually abused and raped at work, was diagnosed "completely psychiatrically disabled," leaving her unable to read or open mail or to function in society. Stoll v. Runyon, 165 F.3d 1238 (9th Cir. 1999). Equitable tolling was also applied where a habeas petitioner's mental illness was so severe (he suffered from delusions that he worked undercover for the FBI and that the FBI had staged his conviction to lure his ex-wife out of hiding so she could be arrested on drug charges) that he was incapable of understanding the need to timely file his petition. Forbess v. Franks, 749 F.3d 837 (9th Cir. 2014).

As for homelessness, courts do not consider that to be an extraordinary circumstance warranting tolling where it appears that the plaintiff is still able to pursue claims, despite being homeless. See, e.g., Holland v. Western Development Corp., 799 F. Supp. 181, 183 (D.D.C. 1992) ("Even while [plaintiff] was homeless, she managed to pursue her claim for unemployment benefits. She was clearly able to maintain contact with a government agency where necessary despite her homelessness."); Howard v. Fort Wayne Community Schools, No. 1:13 CV 253, 2015 WL 4393993 at *1 (N.D. Ind., July 16, 2015) (declining to toll limitations period due to homelessness where the plaintiff was able to file a pro se EEOC charge and a pro se federal lawsuit, "demonstrat[ing] a basic understanding of the legal issues involved and the ability to follow simple instructions"); Johnson v. Airway Cleaning Co. at JFK Airport, No. 12 Civ. 4306(BMC), 2012 WL 5346983 at *3 (E.D.N.Y., Oct. 29, 2012) (stating that while "it is conceivable that relocation to a homeless shelter might warrant some period of equitable tolling," no tolling was warranted under the circumstances where plaintiff did not tie her inability to file on time to her residence in a homeless shelter and managed to file her lawsuit despite her residence in that shelter).

The facts of the case before this court are not nearly as compelling as those in which

tolling has been applied. Nothing about Friend's assertions re homelessness, post-traumatic stress disorder, and medication side effects suggests that he is so compromised that he cannot understand the meaning of a deadline. In fact, the FAC alleges that after the arbitrator's July 29, 2013 decision, he "diligently communicated with Union representatives . . . regarding the next steps in the appeal process," and also communicated with the EEOC about the status of his case. (See, e.g., FAC ¶¶ 55, 62-66). And, despite his homelessness and claimed mental issues, plaintiff managed to file this lawsuit, to timely file his FAC, and to timely file his opposition to the instant motions to dismiss. No tolling is warranted on these bases.

       b. **Good Faith Error**

Friend nevertheless asserts that after he received the EEOC's adverse decision, he mistakenly believed that the EEOC was the place to start a civil action. However, plaintiff's claimed good faith error as to the place to file a civil action simply has no bearing on the incidents in question. According to the FAC's allegations, the EEOC's decision issued in April 2015 (FAC ¶ 58) and plaintiff received it on May 1, 2015 (FAC ¶ 61)---well after the limitations period as to his unfiled grievances and his dissatisfaction with the representation he received in the grievance and arbitration proceedings had long since passed. No tolling is warranted on this basis.

    **2.** **Equitable Estoppel**

Equitable estoppel focuses on a defendant's actions in preventing a plaintiff from filing suit. Johnson, 314 F.3d at 414. The doctrine may apply where the defendant takes active steps, such as misrepresenting or concealing necessary facts, to prevent the plaintiff from suing in time. Id.; Santa Maria, 202 F.3d at 1176-77.

In his declaration submitted in opposition to defendants' motion, plaintiff argues that equitable tolling applies because after he received the EEOC's decision denying his appeal, the Union allegedly promised to find him an attorney to either ask the EEOC for reconsideration or to file a civil suit, but then left him in the dark as to when the attorney would do either of those things. (Dkt. 37 at ECF pp. 3,4). Plaintiff says that this promise was made "in exchange for holding off on taking legal action against my union." (Dkt. 37 at 3, 4). However, as discussed, the FAC alleges that the EEOC's decision issued in April 2015. (FAC ¶ 58). By then, the

11

limitations periods as to the unfiled grievances and his dissatisfaction with the representation he received in the grievance and arbitration proceedings had long since passed. Tolling on this basis is not warranted.

Accordingly, plaintiff's duty of fair representation claim as to the unfiled grievances and his dissatisfaction with the representation he received in the grievance and arbitration proceedings is dismissed as untimely. Because the court concludes that no tolling applies, and that a further attempt at amendment would be futile, the dismissal is without leave to amend.

### C. Duty of Fair Representation----EEO/EEOC Proceedings

That leaves Friend's allegation that the Union breached its duty of fair representation "when it failed to communicate the outcome of the EEO and EEOC proceedings to Plaintiff and inform Plaintiff of his right to appeal and the timeframe for doing so" (FAC ¶ 85).[5] The Union argues that the FAC fails to state a claim. In sum, it contends that the Union was not Friend's exclusive representative with respect to the EEO/EEOC proceedings, and thus those matters do not fall with the scope of the Union's duty of fair representation.

"The duty of fair representation arises from a union's statutory role as the exclusive bargaining representative for a unit of employees." McNamara-Blad v. Ass'n of Professional Flight Attendants, 275 F.3d 1165, 1169 (9th Cir. 2002). That is, under a collective bargaining agreement, "employees subordinate their interests to the collective interest of all employees in the bargaining unit, so that the union representing that unit may achieve a better collective bargain with the employer than each employee could obtain alone." Id. (citing Vaca v. Sipes, 386 U.S. 171, 177 (1967)). And, "[i]n ceding their interests to the union, the employees forego some individual rights against the employer." Id. "The duty of fair representation was created as a check on the union 'to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law.'" Id. (quoting Vaca, 386 U.S. at 177). "'Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without

---

[5] On the record presented, the court cannot say for sure whether matters concerning the EEO proceedings are also time-barred.

12

hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" Id. (quoting Vaca, 386 U.S. at 177).

"The scope of the duty of fair representation is generally coextensive with the scope of the union's statutory authority as the exclusive bargaining agent." Id. "Definitionally, however, the duty of fair representation does not apply where the union is not representing the workers in question." Simo v. Union of Needletrades, Indus. & Textile Employees, 322 F.3d 602, 614 (9th Cir. 2003). Thus, a union's duty of fair representation does not extend to persons who are not employees in the bargaining unit. McNamara-Blad, 275 F.3d at 1169. Nor does the duty apply to actions taken where the union was not acting in a representative role. See, e.g., Simo, 322 F.3d at 612 (concluding that the duty of fair representation did not apply to alleged retaliatory measures taken by a union against workers because the union was not acting in a representative capacity when it took those actions). "'[A] union . . . can be held to represent employees *unfairly* only in regard to those matters as to which it represents them *at all*---namely, 'rates of pay, wages, hours . . ., or other conditions of employment." United Brotherhood of Carpenters and Joiners of America v. Metal Trades AFL-CIO, 770 F.3d 846, 849 (9th Cir. 2014) (quoting Int'l Bhd. of Teamsters, Local No. 310 v. NLRB, 587 F.2d 1176, 1883 (D.C. Cir. 1978)). "'In other words, the duty of fair representation extends only to matters involving an employee's dealings with his employer and ordinarily does not affect an employee's relationship with the union structure.'" Id. (quoting Kolinske v. Lubbers, 712 F.2d 471, 481 (D.C.Cir.1983)).

Here, the Union argues that the duty of fair representation does not extend to plaintiff's pursuit of EEO and EEOC proceedings because, in such matters, he had the right to any representative of his own choosing. See 29 C.F.R. § 1614.605(a) ("At any stage in the processing of a complaint, including the counseling stage § 1614.105, the complainant shall have the right to be accompanied, represented, and advised by a representative of complainant's choice."). Since Friend could have chosen anyone, the Union was not his exclusive representative in this area. Thus, the Union argues, no duty of fair representation existed. See Am. Federation of Govt. Employees, AFL0CIO, Local 916 v. Fed. Labor Relations Authority, 812 F.2d 1326 (10th Cir. 1987) (holding that where a nonmember employee had the right to choose a representative other

13

than the union, the duty of fair representation did not require the union to represent the nonmember employee in an appeal from a disciplinary action); Nat'l Treasury Employees Union v. Fed. Labor Relations Authority, 800 F.2d 1165 (D.C. Cir. 1986) (concluding that where a nonmember employee pursued a statutory appeal not "by the union's suffrage but as a matter of right," the union did not commit an unfair labor practice when it limited attorney representation of nonmembers to matters related to the collective bargaining process).

In the present case, because it appears that Friend could have chosen his own representative (rather than relying on the Union), the Union may not have had a duty to provide the assistance he claims he was owed in the EEO/EEOC proceedings. Unlike the claimants in Am. Federation of Govt. Employees and Nat'l Treasury Employees Union, however, the FAC indicates that Friend was a union member. And, liberally construed, the FAC's allegations (which must be deemed true for purposes of resolving the instant motion), suggest that the Union undertook to represent him (or at least said that it would), and plaintiff relied on those statements. At oral argument, the Union argued that, in view of the way in which the Union administers its obligations, any agreement to assist plaintiff in EEO/EEOC proceedings is solely attributable to plaintiff's local union (which may have agreed to provide services outside the collective bargaining agreement) and cannot implicate the Union's duty of fair representation. That might well be. But, that conclusion would appear to depend on matters requiring proof beyond the pleadings. So, although the court harbors some doubt whether plaintiff ultimately will prevail on his claim, the court is also unprepared, on the record presented, to conclude that he has not stated a claim for relief as a matter of law. On this particular issue, the Union's motion to dismiss is denied.

**ORDER**

Based on the foregoing, the Union's motion to dismiss is (1) granted, without leave to amend, as to defendant Hegarty; (2) granted, without leave to amend, as to plaintiff's claim concerning the unfiled grievances and his dissatisfaction with the representation he received in the grievance and arbitration proceedings; and (3) denied as to plaintiff's claim as to the EEO/EEOC

14

proceedings.

    SO ORDERED.

Dated:   March 29, 2017

_____
HOWARD R. LLOYD
United States Magistrate Judge

5:15-cv-04506-HRL Notice has been electronically mailed to:

Bruce Lerner     blerner@bredhoff.com

Christopher Eugene Platten     cplatten@wmprlaw.com, bsafadi@wmprlaw.com, ltodd@wmprlaw.com

James A. Scharf     james.scharf@usdoj.gov, elizabeth.inocencio@usdoj.gov

Joshua Aaron Segal     jsegal@bredhoff.com, sziaii@bredhoff.com


5:15-cv-04506-HRL Notice sent by U.S. Mail to:

Jeffrey Friend
80 S. Market Street
San Jose, CA 95113